UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00195-LLK

KERESA McGOWAN BUNCH                                                                                    PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security                                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. Plaintiff's fact and law summaries is at Docket # 16, and Defendant's fact and law summary is at Docket # 21. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 10).

Plaintiff makes two arguments. First, she argues that the administrative law judge ("ALJ") erred in finding that her degenerative disc disease does not satisfy Listing § 1.04. Second, she argues that the ALJ erred in finding that her pain and other subjective symptoms allow performance of a limited range of light work. Because neither argument is persuasive, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**The ALJ's Decision**

In denying Plaintiff's disability claim, the ALJ followed the familiar 5-step sequential evaluation process. First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 2014, when she alleges she became disabled. (Administrative Record ("AR"), p. 201). Second, the ALJ found that Plaintiff has severe, or vocationally significant, degenerative disc disease and depression. (AR, p. 202). Third, the ALJ found that Plaintiff does not have an impairment satisfying the clinical criteria of any impairment listed in Appendix 1 of the regulations. (AR, p. 202). Particularly, her degenerative disc disease does not satisfy Listing § 1.04. (*Id.*). As required for all cases that advance beyond step 3, the ALJ

1

determined Plaintiff's residual functional capacity (RFC). The ALJ determined that Plaintiff has an RFC to perform a limited range of light work. (AR, p. 204). Fourth, the ALJ found that Plaintiff is not disabled because she retains the ability to perform her past relevant work as a light fast food manager. (AR, p. 209). Fifth, the ALJ found, in the alternative, that Plaintiff is not disabled because she retains the ability to perform a significant number of light jobs in the national economy such as office helper, cashier, and mail clerk. (AR, p. 211). These jobs permit the worker to alternate sitting and standing at 30-minute intervals. (*Id.*).

## The ALJ did not err in finding that Plaintiff's degenerative disc disease does not satisfy Listing § 1.04.

Plaintiff's first argument is that the ALJ erred in finding that her degenerative disc disease does not satisfy Listing § 1.04. Plaintiff carries the burden of proving that the medical criteria of a listed impairment are satisfied, and this burden is strictly construed because the Listing represents an automatic screening in of an impairment as per-se disabling (independently of any other medical or vocational consideration). *See Sec'y of Health & Human Services v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of [a listed impairment's] criteria, no matter how severely, does not qualify"); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("It is insufficient that a claimant comes close to meeting the requirements of a listed impairment" to satisfy the Listing).

Listing § 1.04 provides that the following disorder of the spine is per-se disabling:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

The ALJ found that Listing § 1.04(A) is not satisfied due to a lack of evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." *See* ALJ's decision at AR, p. 202 ("[T]he undersigned notes full strength and normal sensory function in pain clinic notes [AR, p. 805] and the latest office visit to the treating neurosurgeon finds full strength and sensory function with no mention of straight-leg-raise test [AR, p. 847]"). The note relied upon by the ALJ at AR, p. 805 states, in pertinent part, as follows: "Strength in the upper and lower extremities is normal. … No evidence for sensory loss. … Deep Tendon Reflexes: Right Knee 2+; Left Knee 2+; Right Ankle 2; Left Ankle 2." The note at AR, p. 847 states: "She has 5/5 strength in the lower extremities in all muscle groups. The patient has normal sensation and symmetric reflexes bilaterally. … There is 5/5 strength in the upper extremities bilaterally. Sensory exam is symmetric as are the upper extremity reflexes." These notes cited by the ALJ are only representative examples showing a lack of motor loss accompanied by sensory or reflex loss. Similar examples can be found at AR, pp. 536, 549, 551, 553, 557, 570, 585, 592 637, 639, 656, 662, 683, 714, 747, 767, 776, 818, 827, 847. Therefore, while Plaintiff may have, on occasion, exhibited positive straight-leg raising, her repeatedly normal strength, reflex, and sensory findings show that Listing § 1.04(A) is not satisfied.

Plaintiff does not allege Listing § 1.04(B) is satisfied, and her fact and law summary (Docket # 16) does not mention "spinal arachnoiditis." Plaintiff suggests that Listing § 1.04(C) is satisfied in light of "findings of spinal stenosis with pseudoclaudication, resulting in difficulties with ambulation." (Docket # 16, p. 6). Assuming for the sake of argument that there is evidence of "lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness," there is no evidence that it results in "inability to ambulate effectively, as defined in 1.00B2b." Contrary to Plaintiff's suggestion, the latter requires more than simply

"difficulties with ambulation." 1.00B2b defines "inability to ambulate effectively" as "having insufficient lower extremity functioning … to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." While Plaintiff may have, on occasion, exhibited antalgic gait,[1] the lack of any allegation or evidence that she requires an assistive device for ambulation shows that Listing § 1.04(C) is not satisfied.

Plaintiff notes that the ALJ gave significant weight to the opinion of the Commissioner's non-examining consultant John Gedmark, M.D., and that Dr. Gedmark gave his opinion before a subsequent EMG (nerve conduction study) indicated nerve root involvement. (Docket # 16, p. 6). Plaintiff cites *Courter v. Comm'r*, 479 F. App'x 713, 723 (6th Cir. 2012) for the proposition that "[a]n ALJ must seek an updated opinion on the issue of medical equivalence where medical evidence is received that may change a consultant's finding that an impairment is not equivalent to a listing." (*Id.*). *Courter* quoted Social Security Ruling (SSR) 96-6p for the proposition that "[w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." The ALJ was not required to obtain an updated opinion on medical equivalence to Listing § 1.04 because EMG evidence does not change the fact that the Listing was not satisfied.

**The ALJ did not err in finding that Plaintiff's pain and other subjective symptoms allow performance of a limited range of light work.**

Plaintiff's second argument is that the ALJ erred in finding (AR, p. 204) that her pain and other subjective symptoms allow performance of a limited range of light work. To the extent Plaintiff's position is that her pain does not allow her to stand/walk for prolonged periods of time, any error is rendered

---

[1] An antalgic gait is a limp in which a phase of the gait is shortened on the injured side to alleviate the pain experienced when bearing weight on that side. *Elokobi v. Comm'r*, No. 3:15-cv-77, 2015 WL 8259557, n.5 (S.D. Ohio Dec. 9, 2015).

harmless by the ALJ's alternative fifth-step finding that Plaintiff retains the ability to perform a significant number of jobs in the national economy that permit the worker to alternate sitting and standing at 30-minute intervals. (AR, p. 211).

The ALJ "concede[d] that [Plaintiff's] spinal impairment causes significant limitations." (AR, p. 208). The ALJ further conceded that Plaintiff's spinal impairment "could reasonably be expected to cause some of the alleged symptoms." (*Id.*). "[H]owever, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR, p. 208).

Historically, an ALJ's evaluation of the intensity, persistence, and limited effects of pain and other subjective symptoms (based on the medical and non-medical evidence as a whole) was known as the "pain-credibility" analysis. The Sixth Circuit instructed reviewing courts not to not disturb an ALJ's pain-credibility analysis absent a "compelling reason." *Smith v. Comm'r*, 307 F.3d 377, 379 (6th Cir. 2001). In 2016, the Social Security Administration promulgated Social Security Ruling (SSR) 16-3p, which indicated that (going forward) references to "credibility" should be avoided because "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, *1. Nevertheless, the deferential standard of review of an ALJ's determination of the limitations due to pain and other subjective symptoms remains.

In support of her finding that Plaintiff can perform a limited range of light work, the ALJ gave "significant weight" to the findings of the Commissioner's non-examining consultant John Gedmark, M.D., except that the ALJ "adopt[ed] additional postural limitations to accommodate [Plaintiff's] subjective complaints." (AR, pp. 209, 301-03). The closest Plaintiff comes to a "compelling reason" for disturbing the ALJ's determination of her limitations due to pain and other subjective symptoms is the ALJ's reliance on Dr. Gedmark's findings, which Dr. Gedmark gave "on February 13, 2015 and [which] did not take into

account the [subsequent] EMG (nerve conduction study) performed that showed nerve root involvement." (Docket # 16, p. 6).

The ALJ acknowledged that "[a]n EMG study showed nerve damage" and that (along with some positive straight-leg raising and antalgic gait) there was "one abnormal EMG study." (AR, pp. 205, 208). In light of the ALJ's own consideration of the EMG study, the ALJ did not err in relying on Dr. Gedmark's findings, which did not take into account the subsequent EMG study. *See Lawrence v. Comm'r*, No. 1:16CV885, 2016 WL 7229370, at *8 (N.D. Ohio Dec. 14, 2016) ("That [the Commissioner's non-examining consultant] did not review an incomplete EMG test showing mild results does not support Lawrence's argument that the ALJ erred when she relied on [the consultant's] opinion"); *McGrew v. Comm'r*, 343 F. App'x 26, 32 (6th Cir. 2009) (rejecting argument that ALJ erred when he relied on non-examining consultant's opinion that was based on an incomplete record when the ALJ reviewed the complete record); *Kelly v. Comm'r*, 314 F. App'x 827, 831 (6th Cir. 2009) ("Absent a clear showing that the new evidence renders the prior [consultant's] opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand").

At best, Plaintiff has shown that, based on the medical and non-medical evidence as a whole, substantial evidence would have supported a finding of greater limitations due to pain and other subjective symptoms. That is not a compelling reason to disturb the ALJ's decision. *See Blakley v. Comm'r*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Sec'y*, 109 F.3d 270, 273 (6th Cir. 1997)) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**Order**

The final decision of the Commissioner is AFFIRMED, and Plaintiff's complaint is DISMISSED.

October 24, 2018

Lanny King, Magistrate Judge
United States District Court